1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  JUDITH LEE FRARY, | Case No.  1:20-cv-00260-SAB |
| 12         Plaintiff, | ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL AND DIRECTING |
| 13      v. | CLERK OF COURT TO CLOSE ACTION |
| 14  COMMISSIONER OF SOCIAL SECURITY, | (ECF Nos. 14, 15, 16) |
| 15         Defendant. | |

16

17

**I.**

18

**INTRODUCTION**

19      Judith Lee Frary ("Plaintiff") seeks judicial review of a final decision of the

20  Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for

21  disability benefits pursuant to the Social Security Act.  The matter is currently before the Court

22  on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley

23  A. Boone.[1]

24      Plaintiff suffers from degenerative disc disease, neuropathy, and foot degenerative joint

25  disease.  For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

26  / / /

27  / / /

28  ―――――――――――――――――
[1]  The parties have consented to the jurisdiction of a United States Magistrate Judge.  (See ECF Nos. 7, 8, 17.)

## II.

## BACKGROUND

### A.   Procedural History

On October 11, 2016, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging a period of disability beginning on June 19, 2016.  (AR 366-67, 391.)  Plaintiff's claims were initially denied on March 9, 2017, and denied upon reconsideration on July 26, 2017.  (AR 288-92, 298-303.)  Plaintiff requested a hearing before an Administrative Law Judge, and on March 5, 2019, Plaintiff appeared with counsel before Administrative Law Judge Paul Armstrong (the "ALJ") for a hearing.  (AR 162-96.)  On March 12, 2019, the ALJ issued a decision finding that Plaintiff was not disabled based on finding Plaintiff could perform past relevant work.  (AR 143-154.)  On December 26, 2019, the Appeals Council denied Plaintiff's request for review.  (AR 1-7.)

Plaintiff filed this action on February 20, 2020, and seeks judicial review of the denial of her application for disability benefits.  (ECF No. 1.)  Due to the COVID-19 public health emergency, the action was stayed until the filing of the administrative record, which was filed on November 23, 2020.  (ECF Nos. 9, 10, 11.)  On February 23, 2021, Plaintiff filed a brief in support of remand.  (ECF No. 14.)  On March 25, 2021, Defendant filed a brief in opposition. (ECF No. 15.)  On March 30, 2021, Plaintiff filed a reply brief.  (ECF No. 16.)

### B.   Hearing Testimony

Plaintiff testified at the March 5, 2019 hearing with the assistance of counsel.  (AR 162-96.)  The ALJ inquired whether the record was complete and counsel and the ALJ confirmed that newly submitted records were in the record.  (AR 43.)

In 2015, after ten (10) years in the funeral industry, Plaintiff left the line of work after she received a certificate to sell life insurance and cemetery property in the State of Arizona.  (AR 166-67.)  The previous position as a prearrangement counselor became a commission only position, and Plaintiff described it as being a very high pressure sales job, even though the nature of the industry would not seem so, and thus after ten (10) years, Plaintiff "just needed a break." (AR 167.)  Plaintiff then began work as a loan adviser in a call center, stating that while there

were "emotional effects from the funeral industry," she was nonetheless able to get hired.  (Id.)
The position was with Drive Time, helping low-income individuals finance car purchases.  (Id.)
Working in the call center was a challenge because of Plaintiff's back.  (Id.)  She did receive
breaks and was able to stand, but the onset of weakness in her wrist and in her neck, resulted in
the positioning of body mechanics being a challenge.  (Id.)  At that time, Plaintiff's back was
spasming quite frequently.  (Id.)  Plaintiff used a lot of sick days because she couldn't get in the
car to drive to work, stating she used almost all of her sick days except for maybe one before she
left Arizona to join other family in California.  (Id.)

Plaintiff had lived in Arizona for twenty (20) years, where her parents had retired.  (Id.)
After a divorce, Plaintiff had lifelong problems with depression, anxiety, and was diagnosed with
bipolar disorder.  (Id.)  In the funeral industry, Plaintiff was starting to take medication for
anxiety.  (AR 167-68.)  The ALJ then asked if all of the issues happened at once.  Plaintiff
answered she was married in 1998, that around 2014 she began having marital problems along
with the job stress, and after being sober for fourteen (14) years, she began drinking again.  (AR
168.)  Plaintiff had gone into a residential treatment program in 1996.  (Id.)

Plaintiff stated the drinking helped relieve her anxiety and depression faster than the
psychiatric medication, and stated she was active in her recovery, but began the bad behavior
again.  (AR 168-69.)  Plaintiff confirmed she was still attending AA meetings, has a sponsor, and
a counselor that she speaks with daily.  (AR 169.)

Plaintiff was recommended to have surgery on both of her hands, and started with the
right because she is right-handed.  (AR 169-70.)  Plaintiff stated the surgery did not help much,
and that she did not get into physical therapy quickly, but was able to do exercises on her own.
(AR 170.)  Plaintiff uses a lot of compression, and if lifting anything very heavy, wears splints
that support the thumb.  (Id.)  When asked if she can type and use a cell phone, Plaintiff stated
her hands fatigue very easily, and she can maybe do such things for about ten (10) minutes.  (Id.)
When working on a computer, Plaintiff's wrists get tired, and her neck gets painful in that
position.  (Id.)  Plaintiff stated she was in progression to find out more about her neck, and was
waiting for an MRI.  (Id.)  Plaintiff stated the neck was an old injury, but that she was

degenerating in a lot of physical ways.  (Id.)  Plaintiff stated she was fifty-eight (58) years old the day of the hearing, and some of her problems started when she was in her forties, some in her fifties, and that she doesn't think the problems are reversible.  (Id.)  Plaintiff was not sure about what the neck prognosis or diagnosis would be given she was waiting for the new back MRI. (Id.)  Plaintiff testified she sees a chiropractor weekly, and when at home, knows proper body mechanics.  (Id.)  Plaintiff said she wears a brace, and is mindful to why and how she walks because of her ankles and feet.  (AR 170-71.)

Plaintiff said she has a combination of several things, including mental issues, as well as physical issues related to her neck, wrists, shoulders, back, ankles, and feet.  (AR 171.)  Plaintiff stated she takes a lot of over-the-counter medicine because she can't take any narcotics, specifically cannot take benzopyrene.  (Id.)  When Plaintiff wakes up she starts right away with a combination of different nonsteroidal anti-inflammatory drugs, and continues throughout the day.  (Id.)  Plaintiff was prescribed Soma, which she just takes at night to help sleep.  (Id.) Plaintiff does not take it during the day, because: many of her medications make her sleepy already; her thyroid disease also causes fatigue; her Synthroid causes sleepiness, the anti-anxiety medicine and the bipolar medicine also make her tired; and mid-morning she starts getting foggy.  (Id.)  Plaintiff tries to be mindful, drinks a lot of water, rests, and takes care of her physical needs as best she can.  (Id.)

The ALJ then asked about whether Plaintiff thought she could perform her previous job in the funeral industry.  (Id.)  Plaintiff answered that because she was licensed in Arizona, she would have to go back to school.  Additionally, in the last few years she had some very difficult families as clients, and that started taking a toll on her emotionally and it remains with her now. (AR 172.)  Plaintiff stated the job was highly emotional, and had to meet with the families for funeral arrangements.  (Id.)  Plaintiff would prepare documentation for the burial, for internment, and would help the funeral director in the arrangement to coordinate graveside services.  (Id.)  It was a very emotional job as some clients had lost their child or a spouse, and with her own personal losses, Plaintiff lost her "edge if that would explain it in my ability to help families during a time of loss."  Finally, she would have to go back to school to get a life insurance

license in California, which is difficult, and additionally, a cemetery sales person needs a real estate license as well.  (AR 172-73.)

Plaintiff confirmed that Green Oak Ranch is a Christian based recovery organization that provides a sober-living environment where Plaintiff would receive daily counseling, behavioral health assistance, and go to for a safe environment to pull herself together and put her drug and alcohol use behind her.  (AR 173.)  Plaintiff stated she no longer lived at Green Oak Ranch, though afterward house-sat for the clinical director.  Then through a mutual friend, Plaintiff began staying at a ranch and watching the property where dogs were raised.  (Id.)  Plaintiff stays on the property watching it while the friend is at work, and lives in a camper on the property. (Id.)  Plaintiff would help with the dogs and feed the horses, though stated she couldn't do any heavy lifting or ride the horses anymore.  (AR 174.)

Plaintiff testified she is able to do light work with no pressure, and can sit down whenever she wants.  (Id.)  With wearing braces, Plaintiff is very careful, taking her time and limiting herself to doing simple tasks, like sweeping or feeding the horses.  (Id.)  There are five older, calm horses that help keep her spirit up.  (Id.)  There are four dogs, like Border Collies, and other mixes.  (AR 175.)  When asked if the dogs help her, Plaintiff stated she tried an assistance dog, but the dog wasn't properly trained and actually ended up causing more stress. (Id.)  Plaintiff does not receive compensation other than a free place to stay.  (Id.)  For living expenses, Plaintiff had been living off her savings, but recently needed to cash out some of her 401k to help with her budget, which is around $1,200 a month.  (AR 176.)

In describing a past position, Plaintiff said she was classified as a loan adviser, but was more of a collection agent.  The job was a high pressure position requiring her to make 160 outgoing calls a day.  (AR 177.)  Plaintiff had to fulfill quotas, and said the experience was nice, but she was ready to do something different when her family encouraged her to move back to California after her parents had passed away, and her marriage was dissolved.  (Id.)  Plaintiff said her "anchor" was her sister's house in Oceanside, California.  (Id.)

When asked about smoking cigarettes, Plaintiff stated she basically stopped, that she was drinking coffee and smoking because she was sleepy a lot, but she switched to a vaporizer and

1  keeps the use to a minimum.  (AR 178.)  Plaintiff said she is very conscientious about the

2  cigarettes and nicotine as they are not good for her health and her medication, and the vaporizer

3  has a really low content of nicotine.  (Id.)

4          The ALJ asked how far Plaintiff could generally walk, and Plaintiff stated she has boots

5  with custom orthotics, wears braces, and her most recent podiatrist was sending her for a custom-

6  fit orthotic that would support her arch and ankle.  Plaintiff walks better on level ground, and has

7  to be mindful where she walks and how she walks, and was unsure how far.  (AR 178-79.)

8  Plaintiff said she doesn't have to walk very far on the ranch, so about maybe a football field

9  length out to the corrals.  (AR 179.)  Plaintiff drives her car up their property on the hill, so

10 doesn't have to walk very far in that regard.  (Id.)  The ALJ asked about the answers to a written

11 questionnaire where Plaintiff indicated she still hiked and camped, and Plaintiff clarified that she

12 meant to answer those were previous hobbies and that she no longer hikes or camps.  (Id.)

13         Plaintiff then answered that she can only lift two (2) or three (3) pounds.  (AR 180.)  The

14 ALJ then asked if she is able to work with the dogs and horses when she can only lift that much

15 weight, and Plaintiff responded that she does not have to handle the horses as they are in the

16 corrals and pasture, and on occasion she puts them in a halter, but they are older horses, and very

17 mild mannered.  (Id.)

18         The ALJ then asked why Plaintiff could not do a sales job that did not involve collections

19 or selling funeral plots, such as her previous position with Home Depot, and why she would not

20 be able to answer the phone at Home Depot or do other tasks involved in such position.  (Id.)

21 Plaintiff answered that they don't let her sit down and she would be on her feet.  (AR 181.)  The

22 ALJ asked what about if the job allowed her to sit down, such as a customer service position or

23 commercial ordering.  Plaintiff answered that because of her neck and pain she is in, the

24 neuropathy, her fatigue, and her age as she gets older, though the ALJ interjected and said age is

25 a common factor for everybody.  (AR 181-82.)  Plaintiff continued that her degenerating body

26 feels like everything is pricking and cracking, swollen and crunched, and the rate of pay would

27 be at like a poverty level.  (AR 182.)  The ALJ responded that you have to start somewhere, and

28 understood that her previous position was high paying because she was certified and had a lot of

1   experience in the field, and the high pressure position may pay more but the other lower paying

2   jobs might be less stressful.  (AR 182.)   Plaintiff answered that she is not sure if she is

3   marketable with doctor's appointments and the medicine that she is on, and needed time off if

4   her back is out and needs to see the chiropractor, and has been seeing doctors a lot recently

5   because of MRIs and follow-ups, in addition to seeing her psychiatrist on a regular basis.  (AR

6   183.)  Plaintiff also said she is still trying to get in to see her therapist, and so with the medicine

7   she just does not feel good a lot of times and does not know if she would have the energy for a

8   retail job.  (Id.)  The ALJ responded that California has very good vocation resources available

9   and a rehabilitation program that work with people to get a job they feel comfortable with at a

10  good rate, stating Plaintiff has marketable credentials.  (Id.)

11       Plaintiff's counsel then presented questions.  (AR 184.)  In response to the question of

12  what other problems make it difficult to work, Plaintiff said the combination of different physical

13  problems and the medication makes her think she would not be a reliable employee.  (Id.)

14  Plaintiff confirmed there was problems with her feet, in addition to an EMG which showed some

15  neuropathy in the lower extremities, and confirmed that she has tingling that comes from her

16  sciatica down her leg and into her ankle and so if starting from the feet up, it is her feet and

17  ankles down her leg.  (Id.)  Plaintiff additionally has lower back problems from sciatica and

18  degeneration.  (Id.)   Plaintiff also recently had a report on the C-spine showing a lot of

19  degeneration in the discs and misalignment.  (AR 184-85.)  Plaintiff has thyroid disease that

20  causes lethargy, medications make her foggy, and she cannot concentrate like she used to.  (AR

21  185.)  The ALJ interjected and stated Plaintiff was doing great at the hearing, which is usually a

22  stressful experience, and Plaintiff stated she had spent days and months writing everything down

23  because she forgets.  (Id.)  Plaintiff continued explaining that without being able to lift she has to

24  rest a lot, and she feels sore a lot and day to day.   Plaintiff also stated she fights a lot of

25  depression and anxiety, so when she gets very anxious, she cannot breathe, and her anxiety

26  medication makes her really sleepy.  (Id.)  Therefore she walks a fine line because when she

27  takes the medication she wants to drink coffee and smoke cigarettes, so it is like a juggling act.

28  (Id.)  Plaintiff stated it feels like she is dragging herself around all the time, and is so tired by

10:00 a.m., that she just shuts down.  (AR 185-86.)  Plaintiff has to rest to get her mind right, has to take over-the-counter pain medication, has to elevate, has to stretch her back, and there are neck exercises that she does and so has to be very mindful to work with what she has to maintain any functionality.  (AR 186.)

Counsel then asked if there was anything else that would prevent her from working full time, and Plaintiff reiterated her anxiety and depression, that she is very moody and irritable, and the social anxiety would make it a challenge to work with the public.  (Id.)  Plaintiff also stated she suffers from twitches which occur when she is anxious or uptight, and they cause her to purse her lips and blink erratically, making her a little self-conscious.  (Id.)  Plaintiff again stated the arthritis is degenerative or progressive, that she has low energy, has chronic fatigue, erratic sleeping habits, and some days she just has a really hard time pulling it all together and keeping it on the rails.  (AR 186-87.)

The Vocational Expert Robert Raschke ("VE") then presented testimony.  (AR 187.)  The VE confirmed that the VE would testify in accordance with the information contained in the Dictionary of Occupational Titles ("DOT"), and that if there was a difference between the VE's testimony and the DOT, the VE would inform the ALJ.  (Id.)  As for past relevant work, the VE testified that in the 1990s through about 2004, Plaintiff had a job as an administrative assistant, DOT code 169.167-010, skilled at level 7, and sedentary; that the work as a salesman in the funeral industry is DOT code 279.357-042, skilled at level 5, and light exertional; that the work at Home Depot was retail sales, hardware, DOT code 279.357-050, semiskilled at level 4, and light exertional, though appeared to be performed at medium because of stocking requirements, so 4 at light per DOT and 4 at medium as performed; and that the loan adviser call center position was classified as call center operator, DOT code 299.357-014, semiskilled at level 3, considered sedentary.  (AR 187-88.)  The VE then asked to confirm that the call center position was working with collections, and Plaintiff confirmed it was, and performed while on a keyboard, on the phone with her neck in a position where she was at the computer, which was difficult, and confirmed she made 160 calls per day, sitting with her bad back.  (AR 188.)  The VE then confirmed that classification as collections, or collection officer, or collection agent,

with DOT code 216.362-014, skilled at level 5, sedentary.  (AR 189.)

The ALJ presented a hypothetical individual limited to light work, and the VE testified she could return to previous work.  (Id.)  The VE confirmed that a light classification would involve more standing, six hours of an eight-hour day, sitting two hours, lifting up to twenty (20) pounds, and ten (10) pounds repetitively.  (AR 189-90.)  The VE testified if she could perform light work, she could return to all of her past work with possibly the exception of the Home Depot position because that was performed at medium exertion, but the rest of the positions were light or sedentary.  (AR 190.)

If Plaintiff was limited to sedentary work, the VE testified she could perform the collections agent/call center position, as they are like a customer service representative position which is classified at level 3 sedentary.  (Id.)  The VE stated the funeral sales position would be eliminated as that is closer to a light exertion.  (Id.)  The VE also stated the administrative assistant position is considered sedentary, but it depends on the employer, but per the DOT, the job would be available.  (Id.)

The ALJ then asked the VE about what would change if the Plaintiff has problems reaching, fingering, and handling, and was limited to frequent, and the VE testified that such limitation would not eliminate the previous positions.  (AR 190-91.)  The ALJ then added a limitation to occasional, and the VE confirmed these previous positions would be eliminated. (AR 191.)

The ALJ then went back to the frequent limitation, and added that such person would be precluded from public contact work due to anxiety, and the VE stated that would eliminate anything that is sales related, and the only job that might still be available would be the administrative assistant, but the VE would need more information about public contact involved in the position.  (AR 192.)  Plaintiff answered that the assistant position was at a medical repair facility, so she was on the phones, doing shipping and receiving, and was the liaison with the corporate office.  (Id.)  Plaintiff handled equipment up to fifteen (15) to twenty (20) pounds. (Id.)  The VE confirmed such position would involve occasional public contact eliminating the position, and also clarified that as described, that position would also be eliminated based simply

on the lifting, if she was limited to sedentary work.  (AR 193.)

The ALJ then presented a situation where the person experiences fatigue, there are requirements such as production requirements such as the 160 calls to be completed, and such person could not meet such requirements by about fifteen percent (15%), and would be off task because of position problems and with fatigue.  (Id.)  The VE clarified that anytime questions pertained to absences or being off-task, the information would not be addressed in the DOT or any the companion manuals.  (AR 193-94.)  The VE testified that based on their experience, such amount of time off-task would equate to no work available, and that at that point you are no longer competitively employed, equating to being off six hours per week, or three days in a four-week month.  (AR 194.)  The VE confirmed this would apply to any exertional level.  (Id.)

The ALJ then concluded the hearing.  (AR 194-95.)

## C.    The ALJ's Findings of Fact and Conclusions of Law

The ALJ made the following findings of fact and conclusions of law:

- Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2021.

- Plaintiff has not engaged in substantial gainful activity since the alleged onset date of June 19, 2016.

- Plaintiff has the following severe impairments: degenerative disc disease, neuropathy, and foot degenerative joint disease.

- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

- Plaintiff has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) where the Plaintiff lifts or carries 20 pounds occasionally and 10 pounds frequently, stands or walks for six of eight hours during the workday, and sits for six of eight hours during the workday.

- Plaintiff is capable of performing past relevant work as an administrative assistant, funeral salesperson, retail salesperson, and loan advisor/collector.  This work does not

require the performance of work-related activities precluded by the Plaintiff's residual functional capacity.

- Plaintiff has not been under a disability, as defined in the Social Security Act, from June 19, 2016, through the date of the ALJ's decision, March 12, 2019.

(AR 146-154.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520;[2] Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.

Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.

Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not

---

[2]  The cases generally cited herein reference the regulations which apply to disability insurance benefits, 20 C.F.R. § 404.1501 et seq., and Plaintiff is also seeking supplemental security income, 20 C.F.R. § 416.901 et seq.  The regulations are generally the same for both types of benefits.  Further references are to the disability insurance benefits regulations, 20 C.F.R. §404.1501 et seq.

1    disabled. If not, the claimant is disabled.

2    Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

3        Congress has provided that an individual may obtain judicial review of any final decision

4    of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).

5    In reviewing findings of fact in respect to the denial of benefits, this court "reviews the

6    Commissioner's final decision for substantial evidence, and the Commissioner's decision will be

7    disturbed only if it is not supported by substantial evidence or is based on legal error."  Hill v.

8    Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means more than a

9    scintilla, but less than a preponderance.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)

10   (internal quotations and citations omitted).  "Substantial evidence is relevant evidence which,

11   considering the record as a *whole*, a reasonable person might accept as adequate to support a

12   conclusion."  Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of

13   Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

14       "[A] reviewing court must consider the entire record as a whole and may not affirm

15   simply by isolating a specific quantum of supporting evidence."  Hill, 698 F.3d at 1159 (quoting

16   Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006).  However, it is not

17   this Court's function to second guess the ALJ's conclusions and substitute the court's judgment

18   for the ALJ's.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is

19   susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be

20   upheld.").

21                                        **IV.**

22                           **DISCUSSION AND ANALYSIS**

23   **A.    The Parties' Primary Arguments and the Principal Legal Guidelines**

24       Plaintiff submits one primary basis for remand: that the ALJ erred by not including her

25   mild mental limitations in the RFC assessment.  (Pl.'s Opening Br. ("Br.") 4, ECF No. 14.)

26   Because the ALJ found Plaintiff suffered from medically determinable impairments consisting of

27   affective disorder and anxiety disorder (AR 149), and stated that Plaintiff suffered from a mild

28   limitation in three of the four areas of mental functioning, Plaintiff argues the ALJ erred by

1  omitting these mental limitations in the RFC assessment.

2      While Defendant acknowledges the ALJ must consider all impairments when

3  determining the RFC, including non-severe, Defendant argues no legal authority requires a non-

4  severe impairment to impose any restriction on an RFC, and in fact, the Ninth Circuit has gone

5  so far to state a *severe* impairment does not need to correlate to any specific limitation or

6  restriction in the RFC, <u>Bray v. Comm'r of Soc. Sec. Admin.</u>, 554 F.3d 1219, 1228–29 (9th Cir.

7  2009).  (Opp'n 6-7.)  Defendant argues that because the case was decided at step four, Plaintiff

8  has the burden, and failed to meet their burden of proving they cannot perform past work.

9  Defendant also argues that the medical opinions in the record found no work-related restrictions

10  from mental impairments, which the ALJ assigned significant weigh to, and because the ALJ

11  properly relied on these opinions, and no other opinions contradicted their conclusion, the

12  decision should be affirmed.  Additionally, Defendant argues that the lay witness testimony was

13  properly rejected, which addressed mental limitations, and the ALJ relied on daily activities in

14  addressing Plaintiff's claimed limitations, which were not challenged by Plaintiff.

15      In consideration of the parties' arguments, for the reasons explained herein, the Court

16  finds no remandable error.

17      The ALJ must consider both severe and nonsevere medically determinable impairments

18  when determining the RFC.  <u>See</u> 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your

19  medically determinable impairments of which we are aware, including your medically

20  determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and

21  404.1523, when we assess your residual functional capacity."); 20 C.F.R. § 404.1545(e) ("When

22  you have a severe impairment(s), but your symptoms, signs, and laboratory findings do not meet

23  or equal those of a listed impairment in appendix 1 of this subpart, we will consider the limiting

24  effects of all your impairment(s), even those that are not severe, in determining your residual

25  functional capacity.").  Plaintiff correctly argues that as for mental limitations, the ALJ was

26  required to take the degree of functional loss imposed by the impairments as described in the

27  four broad categories of 20 C.F.R. § 404.1520(a), and provide a "more detailed assessment by

28  itemizing various functions" when determining the RFC.  <u>Titles II & XVI: Assessing Residual</u>

1   <u>Functional Capacity in Initial Claims</u>, SSR 96-8P (S.S.A. July 2, 1996).  (Br. 5.)   This SSR

2   states:

3           The adjudicator must remember that the limitations identified in
            the "paragraph B" and "paragraph C" criteria are not an RFC
4           assessment but are used to rate the severity of mental
            impairment(s) at steps 2 and 3 of the sequential evaluation process.
5           The mental RFC assessment used at steps 4 and 5 of the sequential
            evaluation process requires a more detailed assessment by
6           itemizing various functions contained in the broad categories found
            in paragraphs B and C of the adult mental disorders listings in
7           12.00 of the Listing of Impairments, and summarized on the PRTF.

8   SSR 96-8P.

9           The ALJ did expressly cite to SSR 96-8P and its requirements, in the opinion.  The ALJ

10  first stated Plaintiff's "medically determinable mental impairments of affective disorder and

11  anxiety, considered singly and in combination, do not cause more than minimal limitation in the

12  claimant's ability to perform basic mental work activities and are therefore nonsevere."  (AR

13  149.)  The ALJ made this conclusion based on consideration of the four broad areas of mental

14  functioning, finding Plaintiff suffered from mild limitations in the areas of: (1) understanding,

15  remembering, applying information; (2) interacting with others; and (3) concentrating, persisting,

16  or maintaining pace.[3]  (AR 149.)  The ALJ found the Plaintiff had no limitation in the fourth

17  functional area of adapting or managing oneself.  (AR 150.)  The ALJ then expressly identified

18  these four areas as the paragraph B criteria (20 C.F.R., Part 404, Subpart P, Appendix 1), and

19  recognized that these criteria are "not a residual functional capacity assessment but are used to

20  rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process,"

21  that the "mental residual functional capacity assessment used at steps 4 and 5 of the sequential

22  evaluation process requires a more detailed assessment by itemizing various functions contained

23  in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the

24  Listing of Impairments (SSR 96-8p)," and that "therefore, the following residual functional

25  capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph

26  _____
    [3]  Understanding, remembering, applying information "refers to the abilities to learn, recall, and use information to
27  perform work activities."  20 C.F.R. § Pt. 404, Subpt. P, App. 1.  Interacting with others "refers to the abilities to
    relate to and work with supervisors, co-workers, and the public."  <u>Id.</u>  Concentrating, persisting, or maintaining pace
28  "refers to the abilities to focus attention on work activities and to stay on-task at a sustained rate."  <u>Id.</u>

14

B' mental function analysis." (AR 150.)

Plaintiff argues that the ALJ's statement that the RFC reflected the "degree of limitation the undersigned has found in the 'paragraph B' mental function analysis," (AR 150), is language that has been rejected by other courts where it is shown only to be a hollow statement of the legal standard that wasn't actually demonstrated to have been followed in the ALJ's opinion. (Br. 5 n.2.). The cases cited by the Plaintiff as to this argument indeed have similarities to the case at hand.

In <u>Smith</u>, like here, the ALJ found that Smith did not have a severe mental impairment at step two, but did find Smith had mild limitations in three of the four areas of mental functioning (the paragraph B criteria). <u>Smith v. Colvin</u>, No. 14-CV-05082-HSG, 2015 WL 9023486, at *8 (N.D. Cal. Dec. 16, 2015). The <u>Smith</u> court found that "[w]hile the ALJ stated that her assessment of Plaintiff's RFC 'reflects the degree of limitation I have found in paragraph B mental function analysis,' [] the record does not demonstrate that the ALJ considered these mild mental limitations when assessing her RFC." <u>Id.</u> The court rejected the Commissioner's argument that the ALJ was not required to include mild mental limitations in the RFC assessment where evidence of mental allegations were elsewhere discounted or rejected, citing the unpublished opinion in <u>Hutton v. Astrue</u>, 491 Fed. Appx. 850 (9th Cir. 2012):

> Defendant argues that the ALJ was not required to include mild mental limitations in her RFC assessment because the ALJ properly rejected Dr. Weems' psychiatric opinion and discredited Plaintiff's mental condition allegations. [] While the ALJ was not required to include properly rejected evidence, she could not disregard her own finding that Plaintiff had mild mental limitations in three out of the four broad functional areas . . . The current record is unclear as to whether the ALJ properly considered the claimant's mild mental limitations when assessing her RFC.

<u>Smith</u>, 2015 WL 9023486, at *9.

Plaintiff also cites <u>Patricia C.</u>, wherein the ALJ utilized the same paragraph B statement used by the ALJ here. <u>See Patricia C. v. Saul</u>, No. 19-CV-00636-JM-JLB, 2020 WL 4596757, at *13 (S.D. Cal. Aug. 11, 2020), <u>report and recommendation adopted sub nom. Craig v. Saul</u>, No. 19CV636 JM (JLB), 2020 WL 5423887 (S.D. Cal. Sept. 10, 2020). The ALJ in <u>Patricia C.</u> also expressly incorporated the analysis of the nonsevere ailments into the RFC analysis, and the

court found that by simply incorporating the Step 2 analysis, the ALJ must not have performed the more detailed analysis that is required in the RFC determination section:

> Despite this acknowledgement and despite his recognition that the mental RFC assessment "requires a more detailed assessment" than that made at Step Two, the ALJ's discussion of Plaintiff's RFC contains no analysis of Plaintiff's mild mental limitations. [An argument could be made that the ALJ assessed Plaintiff's mental RFC at Step Two when he followed the special technique and addressed the paragraph B criteria. However, the hearing decision does not make clear that this is what the ALJ intended, and in any event, the ALJ's analysis of the paragraph B criteria does not shed sufficient light on why the mild mental limitations found by the ALJ were not included in the RFC.]  Instead, the ALJ stated simply that "[t]he analysis of the claimant's nonsevere impairments, supra, is incorporated by reference herein." (AR 20.) By incorporating the *same* Step Two severity assessment into the RFC assessment, the ALJ inarguably did not make "a more detailed assessment." Further, the ALJ's "boilerplate assertion...that his RFC assessment 'reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis' was not sufficient." *See Uranna G.*, 2019 WL 5342537, at *4. The ALJ does not articulate why, after finding that Plaintiff had mild mental limitations in each of the four broad categories, he did not include any restrictions related to those limitations in the RFC.

Patricia C., 2020 WL 4596757, at *13 (footnote 11 entered in brackets above).

Plaintiff submits that the alleged error here is material because of the skilled or semiskilled nature of the past relevant work, and the limitations in the functional areas call into question the finding that she could perform past relevant work.  (Br. 6.)  Plaintiff contends that even the mild limitations in the three areas identified by the ALJ here (i.e. (1) understanding, remembering, applying information; (2) interacting with others; and (3) concentrating, persisting, or maintaining pace), would likely impact the ability to perform the job of administrative assistant, as well as her other past work.[4]  (Br. 7-8.)  Specifically, Plaintiff argues a mild

---

[4] Plaintiff directs the Court to the DOT description of Administrative Assistant, defined as follows:

> Aids executive in staff capacity by coordinating office services, such as personnel, budget preparation and control, housekeeping, records control, and special management studies: Studies management methods in order to improve workflow, simplify reporting procedures, or implement cost reductions. Analyzes unit operating practices, such as recordkeeping systems, forms control, office layout, suggestion systems, personnel and budgetary requirements, and performance standards to create new systems or revise established procedures. Analyzes jobs to delimit position responsibilities for use in wage and salary adjustments, promotions, and evaluation of workflow. Studies methods of improving work measurements or performance standards. Coordinates collection and preparation of operating reports, such as time-and-attendance records, terminations,

1    limitation in the abilities to analyze, interpret, study, organize information (understand,

2    remember and concentrate), and to interview and orientate new employees (relate to coworkers),

3    would likely impact the ability to perform the job of administrative assistant.  (Br. 7-8.)  Plaintiff

4    further contends the positions of funeral salesperson DOT 279.357-042 and salesperson, retail

5    DOT 279.357-050, both require extensive interaction with people, and therefore, even a mild

6    limitation in an indispensable job requirement could preclude performance of that occupation.

7    (Br. 8.)   Finally, Plaintiff submits that the position of collector requires significant compiling

8    skills, ability to read letters of instruction and negotiable instruments (understand and

9    remember), and the ability to examine, calculate interest, and trace items (concentration).  Thus,

10   Plaintiff submits that the ALJ should have elicited testimony from the vocational expert to

11   interpret and evaluate appellant's medically documented non-exertional psychological and

12   emotional limitations, which included limitations in the exercise of judgment, making

13   occupational adjustments, dealing with work stresses, concentrating, understanding,

---

14   new hires, transfers, budget expenditures, and statistical records of performance data. Prepares
15   reports including conclusions and recommendations for solution of administrative problems.
     Issues and interprets operating policies. Reviews and answers correspondence. May assist in
16   preparation of budget needs and annual reports of organization. May interview job applicants,
     conduct orientation of new employees, and plan training programs. May direct services, such as
17   maintenance, repair, supplies, mail, and files. May compile, store, and retrieve management data,
     using computer.

18   DOT No. 169.167–010, available at https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOT01E
19   (last accessed October 25, 2021).  Plaintiff directs the Court to the DOT description of Collection Clerk, defined as
     follows:

20   Receives and processes collection items (negotiable instruments), such as checks, drafts, and
     coupons presented to bank by customers or corresponding banks: Reads letter of instructions
21   accompanying negotiable instruments to determine disposition of items. Debits bank account and
     credits customer's account to liquidate outstanding collections. Computes interest on bills of
22   exchange (drafts), using adding machine or computer terminal, and lists debits and credits on
     liability sheet, or enters information into computer system, to record customer's outstanding
23   balance. Examines, calculates interest on, endorses, records, and issues receipts, and mails
     outgoing collections for payment. Traces unpaid items to determine reasons for nonpayment and
24   notifies customer of disposition. May prove and balance daily transactions. May act as agent for
     collections payable in United States and possessions and be designated Out-of-Town Collection
25   Clerk (financial). May process collection items drawn on local bond and securities exchanges or
     transfers within a locality and be designated Local Collection Clerk (financial). May collect
26   foreign bills of exchange and be designated Foreign-Collection Clerk (financial). ay process
     matured bonds and coupons and be designated Coupon-and-Bond-Collection Clerk (financial);
27   Coupon-Collection Clerk (financial).

28   DOT No. 216.362-014, available at https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOT02A
     (last accessed October 25, 2021).

1    remembering, and carrying out job instructions.  (Br. 7-8, citing Allen v. Sullivan, 880 F.2d

2    1200-1201 (11th Cir. 1989).)

3          What appears most significant to each of the parties' respective positions is the

4    unpublished Ninth Circuit opinion of Hutton, and the numerous district court cases that cite to

5    the opinion (including Smith, 2015 WL 9023486, and Patricia C., 2020 WL 4596757, supra).  In

6    Hutton, the Ninth Circuit reversed for failure to consider the effect of mild PTSD when

7    determining the RFC:

> Regardless of its severity, however, the ALJ was still required to consider Hutton's PTSD when he determined Hutton's RFC. *See* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe[.]' "). The ALJ, however, failed to do so. Instead, the ALJ discredited Hutton, his treating physicians' opinions, and the VA's disability rating. We do not base our action, however, on any of these determinations by the ALJ. Importantly, the ALJ then mischaracterized Mrs. Hutton's testimony at least five times. Finally, the ALJ concluded that, based on Hutton's lack of credibility, his PTSD claims were in "great doubt." On that basis, the ALJ excluded Hutton's PTSD from consideration. This exclusion was legal error. To determine Hutton's RFC properly, the ALJ was required to consider Hutton's physical impairments and the "mild" limitations his PTSD caused with concentration, persistence, or pace, regardless of whether the ALJ doubted that they were caused by Hutton's ever-shifting military history. *See* 20 C.F.R. § 404.1545(a)(2). Further, while the ALJ was free to reject Hutton's testimony as not credible, there was no reason for the ALJ to disregard his own finding that Hutton's nonsevere PTSD caused some "mild" limitations in the areas of concentration, persistence, or pace.

20   Hutton, 491 F. App'x at 850–51.  Plaintiff argues that because she has other severe impairments,

21   limiting her to light work, the presence of mild mental limitations may eliminate the ability to

22   perform the past work, as Hutton shows that even a mild mental limitation can and does preclude

23   skilled and semi-skilled work activity in the right circumstances.  (Br. 9-10, citing Patricia C,

24   2020 WL 4596757 at *12.)  Given the Court finds the parties' respective positions appear to turn

25   on Hutton and the way it has been utilized by various district courts depending on the specific

26   factual circumstances, the Court now turns to consideration of cases wherein district courts found

27   the ALJ erred based on Hutton, and the line of cases that distinguish Hutton and found no error.

28   / / /

**B.     Caselaw Finding Error based on <u>Hutton</u>**

In <u>Aida I.</u>, the court found the ALJ erred in not incorporating any mild mental limitations in the hypotheticals to the VE despite affording the objective medical evidence of such great weight, and thus the ALJ's finding of the ability to perform past work was not supported:

> Thus, the mere fact that the ALJ's nonseverity finding here was supported by the substantial evidence of record is not dispositive of whether the ALJ needed to account for the mild mental limitations underlying the nonseverity finding in his RFC assessment and his hypotheticals to the VE [<u>Hutton</u> and related cases] . . . Here, the ALJ did purport to consider all of the evidence relating to plaintiff's mental impairments in connection with his determination of plaintiff's RFC . . . However, the objective medical evidence with respect to plaintiff's mental impairments, to which the ALJ stated he was according "great weight," merely substantiated the ALJ's step two nonseverity finding. (*See* AR 119.) For example, in support of their nonseverity finding, the state agency psychological consultants had found that plaintiff had mild limitations in the first three of the four broad functional areas and no limitation in the fourth . . . And, the ALJ never explained why he failed to include those specific mild functional limitations in his RFC assessment or in his hypotheticals to the VE, when the ALJ was seeking to ascertain whether plaintiff remained capable of performing her past skilled work as a loan officer . . .
>
> . . .In the Court's view, the objective evidence of specific mild functional limitations here, which the ALJ never stated he was rejecting, is what distinguishes this case from cases in which courts have found *Hutton* to be inapplicable . . . Since the ALJ did not include any functional limitations relating to plaintiff's mental impairments in any of his hypotheticals to the VE underlying his step four determination (*see* AR 151-52), the Court cannot determine how the VE would have testified had the specific mild functional limitations to which Dr. Nicholson had opined been included in the hypotheticals posed. The Court therefore finds that the ALJ's finding at step four of the sequential evaluation process that plaintiff remained capable of performing her past relevant work as a loan officer is not supported by substantial evidence.

<u>Aida I. v. Saul</u>, No. 319CV00476AJBRNB, 2020 WL 434319, at *4–5 (S.D. Cal. Jan. 28, 2020), <u>report and recommendation adopted,</u> No. 319CV00476AJBRNB, 2020 WL 1905356 (S.D. Cal. Apr. 17, 2020).   Thus, the court found the evidence of specific mild functional limitations, which the ALJ never rejected, was distinguishable from cases where courts found no error.

In <u>Solomon</u>, the Court similarly found the ALJ erred in failing to include mild limitations in the RFC determination nor in the presentation to the VE, and contrasted cases in which the

ALJ did otherwise address mental limitations in formulating the RFC:

> Although the ALJ determined Solomon had mental limitations that caused mild limitation in social functioning and concentration, persistence, and pace (A.R. 26-27), the ALJ's order provides no indication that the ALJ considered those limitations when calculating Solomon's RFC during Step 4 . . . The ALJ also erred by omitting the mental limitations from the hypothetical posed to the vocational expert . . . having determined that Solomon had "mild limitation" in social functioning, concentration, persistence, and pace, the ALJ was required to include those limitations in the hypothetical to the vocational expert . . . These omissions were particularly notable because the ALJ ultimately determined that Solomon could perform the occupation of project estimator, which has an SVP of 7 and is thus "skilled work." . . . Consequently, it seems possible that Solomon's limitations in concentration, persistence, and pace could prevent him from performing the occupation of project estimator.
>
> Finally, the Commissioner's reliance on *Ball* and *Medlock* is misplaced. In *Ball*, the court noted that "the record shows that the ALJ *did* consider Plaintiff's mild mental limitations in formulating her RFC." 2015 WL 2345652 at *3 (emphasis added). Similarly, in *Medlock*, the court noted that, "[u]nlike the ALJ in *Hutton*, the ALJ in this case thoroughly considered the medical evidence related to Plaintiff's mild medical impairment at step four before choosing not to include the limitations in the RFC determination." 2016 WL 6137399 at *5. Here, in contrast, the record is silent on this key issue—the ALJ's opinion does not explain why Solomon's mental impairments were omitted from the RFC and hypotheticals.

Solomon v. Comm'r of Soc. Sec. Admin., 376 F. Supp. 3d 1012, 1021–22 (D. Ariz. 2019) (footnotes omitted).

In Uranna, the court found the ALJ's boilerplate citation to the paragraph B criteria discussed in SSR 96-8p, was not sufficient where the mild limitations were not adequately addressed in the RFC and hypotheticals to the VE:

> The Court concurs with plaintiff that this case falls squarely under *Hutton*.[6] The ALJ here found mild limitations in two of the broad functional areas . . . Notwithstanding this acknowledgement [of the paragraph B criteria and SSR 96-9p], the ALJ discussed plaintiff's anxiety impairment only in connection with Finding No. 3 . . .The decision does not contain any discussion or reflect any reasoned consideration of the mild limitations caused by plaintiff's anxiety impairment in connection with Finding No. 5 (RFC). (*See* AR 26-30.) Nor does the decision contain any discussion or reflect any reasoned consideration of the mild limitations caused by plaintiff's anxiety impairment in connection with Finding No. 6 (past relevant work). (*See* AR 30.) The ALJ's boilerplate assertion

> in connection with Finding No. 3 that his RFC assessment "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis" was not sufficient . . .

Uranna G. v. Saul, No. 3:18-CV-02117-RNB, 2019 WL 5342537, at *4 (S.D. Cal. Oct. 21, 2019). The court also could not determine the error was harmless. Id. ("Since the ALJ did not include in any of his hypotheticals to the VE any functional limitations relating to plaintiff's mild limitation[s] . . . the Court also cannot determine how the VE would have testified had any such limitations been included in the hypotheticals posed. The Court does note that, when the ALJ included a functional limitation relating to plaintiff's mild limitation in interacting with others in his second hypothetical . . . the VE testified that all of plaintiff's past work would be precluded.").

The court in Carlson similarly found the paragraph B criteria statement used by the ALJ was insufficient where there was no apparent "reasoned consideration" of the mental impairments in the RFC assessment:

> But the ALJ in no way attempted to reconcile Dr. Forman's finding of no mental impairment with his own finding of "mild" mental impairments . . . As in Hutton, the ALJ did not discuss or give reasoned consideration of the plaintiff's depression and anxiety in his RFC assessment. The ALJ did not explain that he had considered the mild mental limitations or nonsevere impairments and offered only boilerplate language that the plaintiff's RFC "reflects the degree of limitation I found in 'paragraph B' mental function analysis." . . . While the ALJ was not required to include properly rejected medical-opinion evidence of other providers, he could not disregard his own finding that the plaintiff had mild mental limitations. . . . Moreover, the ALJ's VE hypotheticals did not take into account the plaintiff's mental limitations[.]

Carlson v. Berryhill, No. 18-CV-03107-LB, 2019 WL 1116241, at *17–18 (N.D. Cal. Mar. 10, 2019) (footnotes omitted). In Gates, the court similarly found the paragraph B language did not sufficiently counter the fact that there was no clear reasoned discussion in the RFC analysis pertaining to the mental condition connected to the ALJ's finding of a mild limitation:

> As in Hutton, however, when the ALJ went on to assess the medical evidence of record in order to determine the RFC, he did not consider Plaintiff's nonsevere limitation in social functioning . . . The ALJ could reject Plaintiffs testimony as not credible, but did

that not permit him to disregard his own finding that Plaintiff's anxiety disorder caused a mild impairment in social functioning.

The district court cases cited by Plaintiff are consistent with this result . . . According to *Medlock*, the "consideration" requirement is met if the ALJ "actually reviews the record and specifies reasons supported by substantial evidence for not including the non-severe impairment...." *Id.* It is not sufficient, however, for the ALJ to merely "rely on boilerplate language...." *Id.* . . . Here, the ALJ's decision does not reflect an actual consideration and reasoned determination as to why the mild social functioning limitation was not included in the RFC. The Commissioner concedes that the decision does not show that the ALJ clearly and explicitly considered Plaintiff's mild mental disorder as part of the RFC determination, but asks the Court to "infer" that the ALJ did so . . . The Court declines this invitation because the suggested approach of finding the required consideration by "inference" is inconsistent with *Hutton*, the subsequent district court decisions, and the regulation, and it would encourage use of boilerplate language as opposed to actual assessment of all impairments in arriving at an RFC.

Gates v. Berryhill, No. ED CV 16-00049 AFM, 2017 WL 2174401, at *2–3 (C.D. Cal. May 16, 2017); see also Smith v. Colvin, No. 14-CV-05082-HSG, 2015 WL 9023486, at *8–9 (N.D. Cal. Dec. 16, 2015) ("While the ALJ stated that her assessment of Plaintiff's RFC 'reflects the degree of limitation I have found in [the paragraph B criteria]' . . . the record does not demonstrate that the ALJ considered these mild mental limitations when assessing her RFC.").

## C.    Caselaw Finding No Error Based on **Hutton**

Now the Court considers cases where courts found no error despite the plaintiffs' arguments of error based on Hutton.  The Court first considers Sanguras, which Defendant cites as holding that "the ALJ did not run afoul of *Hutton v. Astrue* by finding no mental limitations in the RFC where the ALJ discussed evidence regarding the mental impairment when evaluating RFC."  (Opp'n 10.)

The Sanguras court recently noted that "courts determined *Hutton* is 'inapplicable where the record demonstrates that the ALJ considered a claimant's non-severe mental impairments before concluding that they did not cause any significant limitation necessitating inclusion in the RFC.' "  Sanguras v. Saul, No. 1:19-CV-1036 JLT, 2021 WL 973940, at *5 (E.D. Cal. Mar. 16, 2021) (Sanguras) (quoting Thompson v. Saul, No. 1:18-CV-00137-BAM, 2019 WL 3302471, at

*7 (E.D. Cal. July 23, 2019) ("Thompson"); George A. v. Berryhill, No. 5:18-CV-00405-AFM, 2019 WL 1875523, at *4–5 (C.D. Cal. Apr. 24, 2019) ("George"); and citing Denney v. Saul, No. 1:18-CV-00689-GSA, 2019 WL 4076717, at *7–8 (E.D. Cal. Aug. 29, 2019) ("Denney")).[5]

The Sanguras court explained that George and Denney found no reversible error where the ALJs found a claimant's mental impairments to be non-severe at step two, and then considered related additional evidence of the claimant's mental impairments at step four. Sanguras, 2021 WL 973940, at *5 (citations omitted).  The Sanguras court found the ALJ's discussion of other such evidence after step two, was sufficient and in line with the facts and reasoning in Denney and George:

> Similarly, here, the ALJ identified "mild limitations in concentrating, persistence, or maintaining pace" and "mild limitations in adapting or managing oneself" in evaluating the Paragraph B criteria at step two. (Doc. 7-3 at 32) The ALJ indicated that in formulating the RFC, she considered "all symptoms" and "the entire record." (Id.) For example, the ALJ noted Plaintiff reported she was "able to finish what she starts and she could follow instructions very well." (Id. at 33, citing Exh. 2E and 6E) The ALJ also noted Plaintiff took Xanax "to help with anxiety and sleep, but she was down to taking them as needed." (Id. at 35) Further, ALJ noted Plaintiff was "able to prepare simple meals, do housework such as dishes, dusting, laundry and ironing, go outside, shop in stores and by computer, and socialize with others." (Id. at 33; see also id. at 35) The ALJ found some of the "mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment." (Id. at 35) As in Denney and George A., it is clear the ALJ considered evidence related to Plaintiff's mental impairments after step two, including her activities of daily living and evidence concerning her ability to complete tasks and follow instructions. Thus, the record does not support Plaintiff's assertion that the ALJ did not consider her nonsevere mental impairment in formulating the RFC.

Sanguras, 2021 WL 973940, at *5.  The Sanguras court went on to further find no error in the ALJ's omission of the mild mental limitations in the presentation of hypotheticals to the VE:

> The omission of mental limitations from the RFC rather reflects the conclusion that the impairments would not interfere with the ability to perform basic work activities, which the ALJ reached at

---

[5]  In reply briefing, Plaintiff did not directly respond to the Defendant's citation to Sanguras, nor Denney, which was cited as collecting cases on these issues.

step four after considering Plaintiff's ability to complete tasks, follow instructions, medical record, and daily activities. Consequently, the Court finds Plaintiff fails to show the ALJ did not adequately consider her mental impairments with the RFC [citations] . . . Only limitations supported by substantial evidence must be included in questions presented to vocational experts. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006). An ALJ need not include "any impairments that the ALJ has properly rejected." *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002). Thus, if an ALJ finds a mild mental impairment is adequately addressed in an RFC that omits mental limitations, the hypothetical questions posed to the vocational expert need not include mental limitations. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001) (explaining it is "proper for an ALJ to limit a hypothetical" and finding the ALJ did not err by omitting any limitations for depression when questioning the vocational expert where the record showed Osenbrock's "depression [was] a mild impairment, which presented no significant interference with the ability to perform basic work-related activities"); *Bias v. Astrue*, 484 Fed. Appx. 275, 276 (10th Cir. 2012) (when the ALJ finds there are no work-related limitations related to a nonsevere mental impairment, "the ALJ is not required to include that impairment in his hypothetical"). Because the ALJ determined Plaintiff's nonsevere depression did not require limitations in the RFC, the ALJ did not need to include mental limitations in the hypothetical questions posed to the vocational expert to determine Plaintiff's ability to perform work in the national economy.

Sanguras, 2021 WL 973940, at *6.

The Denney court made a similar determination, explaining that the ALJ's brief discussion at step four following a detailed discussion at step two is not erroneous where the specified reasons are sufficiently supported by substantial evidence within the decision overall:

[*Hutton*] is factually distinguishable from Plaintiff's case. First, at step two, the ALJ emphasized that although Plaintiff's mental impairments contributed to a finding that her multiple impairments were collectively severe, they were not severe impairments individually. He found that any limitation resulting from Plaintiff's mental impairments alone was at most mild. He gave little weight to the treatment records, finding that Plaintiff did not take prescribed anti-depressive medication. In addition, Plaintiff maintained activities of daily living that were inconsistent with a conclusion that her mental impairments severely impacted her functional abilities.

The ALJ did not err in addressing Plaintiff's mental impairments in great detail at step two and briefly at step four. Although an ALJ must discuss and evaluate evidence leading to his conclusion, he is not required to do so under any particular heading in his written decision. *Kennedy v. Colvin*, 738 F.3d 1172, 1178 (9th Cir. 2013) (quoting *Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001). An ALJ's discussion of the relevant medical evidence elsewhere in his

decision should be considered in conjunction with a separate but related discussion of residual functional capacity at step four. *Evenhus v. Astrue*, 815 F.Supp.2d 1154, 1160 (D. Ore. 2011). Any such separate discussion constitutes sufficient consideration. *Id.* "[A]s long as the ALJ 'actually reviews the record and specifies reasons supported by substantial evidence supported by substantial evidence for not including the non-severe impairment [in the RFC determination], the ALJ has not committed legal error.' " *Lindsay v. Berryhill*, 2018 WL 3487167 at *6 (C.D. Cal. July 18, 2018) (No. SACV 17-01545-AFM) (quoting *Medlock v. Colvin*, 2016 WL 6137399 at *5 (C.D. Cal. Oct. 20, 2016) (No. CV 15-9609-KK)).

Denney v. Saul, No. 1:18-CV-00689-GSA, 2019 WL 4076717, at *7–8 (E.D. Cal. Aug. 29, 2019).

In Thompson, the court found no error where the ALJ did not include any of the mild mental limitations found in step two, within the RFC determination.  Like the case at hand, the ALJ did incorporate the statement that the paragraph B criteria were reflected in the RFC, and considered other evidence in the step four discussion:

> Here, at step two, the ALJ found that Plaintiff's mental impairments caused no more than mild limitations in her activities of daily living, social functioning and concentration, persistence or pace. AR 25-26. Although the ALJ did not include any mental limitations in the RFC assessment, the ALJ expressly stated that his RFC assessment reflected the degree of limitation he found in the "paragraph B" mental function analysis," and the assessments finding her no more than mildly limited in mental functioning were "given great weight because they [were] consistent with the claimant's treatment records indicating generally well-controlled depression and anxiety through conservative treatment modalities." AR 26.
>
> Moreover, at step four, the ALJ expressly considered evidence of Plaintiff's mental impairments. In particular, the ALJ considered treatment records reflecting that Plaintiff received treatment for situational stress while caring for her husband's elderly parents. AR 29, 339. The ALJ also considered opinion evidence from Plaintiff's treating doctor, Kenneth Hua, M.C., that certain psychological conditions affected Plaintiff's physical condition and frequently interfered with her ability to perform even simple tasks. AR 30, 670-74. The ALJ gave only partial weight to this assessment, limiting her to the postural and environmental restrictions assessed by Dr. Hua. AR 30. Plaintiff has not challenged the ALJ's evaluation of Dr. Hua's opinion. AR 30. For these reasons, the Court finds that the ALJ properly considered Plaintiff's non-severe mental impairments at step four before concluding that those non-severe impairments did not necessitate

inclusion of any mental limitations in the RFC. *Hutton* therefore is inapplicable.

Thompson v. Saul, No. 1:18-CV-00137-BAM, 2019 WL 3302471, at *7 (E.D. Cal. July 23, 2019).

In George, the court acknowledged the differing conclusions reached by courts based on Hutton, and found no error where the ALJ first found mild limitations at step two, and then considered other evidence pertaining to the mental impairments again at step four, including in weighing physician opinions and describing daily activities:

> Numerous courts in this Circuit have followed *Hutton* and found reversible error where the ALJ failed to include mild mental limitations in the assessment of the RFF. [citations] Other courts have found *Hutton* to be inapplicable where the record demonstrates that the ALJ considered a claimant's non-severe mental impairments before concluding that they did not cause any significant limitation necessitating inclusion in the RFC. [citations]
>
> Here, at step two, the ALJ found that Plaintiff's mental impairments caused no more than mild limitations in daily living; social functioning; and concentration, persistence or pace, and therefore, were not severe. (AR 18-19.) Then, in assessing Plaintiff's RFC at step four, the ALJ considered Plaintiff's mental impairments again. (AR 20-21.) In particular, the ALJ considered the August 2014 report of the psychiatric consultative examiner, Linda M. Smith, M.D . . . The ALJ discussed Dr. Smith's mental status examination . . . The ALJ also discussed Dr. Smith's opinion . . . The ALJ accorded Dr. Smith's opinion "significant weight" because Dr. Smith had personally examined Plaintiff and her opinion was consistent with the objective findings in the medical evidence of record. (AR 24.)
>
> The ALJ also considered other evidence in the record relevant to Plaintiff's non-severe mental impairments. Specifically, the ALJ noted that Plaintiff's daily activities required the same mental and social abilities "necessary for obtaining and maintaining employment," such as running errands, going to malls, attending college, and performing household chores. (AR 24.) Thus, the ALJ properly considered Plaintiff's non-severe mental impairments at step four before concluding that those non-severe impairments did not necessitate inclusion of any limitation in the RFC. *Hutton* does not apply in these circumstances.

George A. v. Berryhill, No. 5:18-CV-00405-AFM, 2019 WL 1875523, at *4–5 (C.D. Cal. Apr. 24, 2019).  Like here, the claimant in George also argued that the past work could be impacted by the mild limitations and argued the ALJ erred by not including such limitations in the

presentation to the VE.  The ALJ found no error:

> Finally, Plaintiff argues that his past work as a salesperson requires "intense interaction with others and a skill set that could be effected by even mild limitations." (ECF No. 19 at 8.) Plaintiff, however, fails to point to any evidence in the record that his step two mild limitation in social functioning would impact his work abilities. While Dr. Smith opined that Plaintiff was mildly impaired in his social function, she did not opine that this mild impairment resulted in any concrete work-related limitation. In fact, as the ALJ noted, Plaintiff reported having no problems getting along with "family, friends, neighbors, or others." (AR 18-19, citing AR 247, 346.) Furthermore, the State agency physicians both concluded that Plaintiff could perform his past relevant work despite mild impairment in social functioning. (*See* AR 69-73, 86-91.) Given the absence of evidence that Plaintiff's mild mental impairments limited Plaintiff's ability to perform any work-related activities, the ALJ was not required to include additional mental limitations in his RFC assessment or hypothetical to the VE. *See Burch v. Barnhart*, 400 F.3d 676, 684 (9th Cir. 2005) (finding ALJ's decision not to include plaintiff's impairment in VE hypothetical or RFC determination was proper because there was no evidence plaintiff's impairment caused any functional limitations); *Carroll v. Berryhill*, 2018 WL 2175977, at *6 (C.D. Cal. May 10, 2018) (rejecting claim that ALJ was required to include in RFC the mild limitation in social functioning finding made at step two where plaintiff failed to point to any evidence indicating that such limitation impacted claimant's work abilities) .
> . . .In sum, the ALJ considered the evidence related to Plaintiff's mental impairments before concluding not to include any mental limitations in the RFC or in the hypothetical to the VE. That was not error.

George A., 2019 WL 1875523, at *4–5.

In Jones, the court found Hutton stood for principle that an ALJ errs if they "explicitly neglect[] to consider a non-severe limitation when assessing the RFC," citing to Ball v. Colvin, 2015 WL 2345652, at *3 (C.D. Cal. May 15, 2015), for its distinguishing of Hutton as based on the ALJ's "explicit refusal" to consider the claimant's mild mental limitations caused by PTSD in the RFC.  Jones v. Berryhill, No. EDCV 17-1138-AS, 2018 WL 3956479, at *2–4 (C.D. Cal. Aug. 15, 2018).  The ALJ had found mild limitations at step two after a detailed discussion, including of daily activities and the physician opinions, and the Jones court found no error despite the fact the ALJ did not include any mental limitations in the RFC assessment:

> Although the ALJ did not include any mental limitations in the RFC assessment, (see AR 32), the ALJ "considered the functional limitations    resulting    from    all    of    [Plaintiff's]    medically

determinable impairments, including those that are nonsevere."
(AR 31 (citing 20 C.F.R. §§ 404.1545, 416.945)). Moreover, the
ALJ stated that the RFC assessment "reflects the degree of
limitation [the ALJ] found in the 'paragraph B' mental function
analysis." (AR 30). Because the ALJ found that Plaintiff's mental
impairments were non-severe and did not cause any significant
impairments, the ALJ was not required to include them in
Plaintiff's RFC. See Ball, 2015 WL 2345652, at *3 ("As the ALJ
found that Plaintiff's mental impairments were minimal, the ALJ
was not required to include them in Plaintiff's RFC."); see
also Hoopai v. Astrue, 499 F.3d 1071, 1077 (9th Cir. 2007)
(explaining that the Ninth Circuit has not "held mild or moderate
depression to be a sufficiently severe non-exertional limitation that
significantly limits a claimant's ability to do work beyond the
exertional limitation."). Thus, having considered the record
evidence of Plaintiff's mental limitations in assessing Plaintiff's
RFC, the ALJ did not err by declining to include mild mental
limitations in the RFC finding.

Jones, 2018 WL 3956479, at *2–4; see also McIntosh v. Berryhill, No. EDCV 17-1654 AGR, 2018 WL 3218105, at *4 (C.D. Cal. June 29, 2018) ("In this case, unlike *Hutton*, the ALJ expressly considered Plaintiff's mental impairment in formulating his residual functional capacity . . . 'Because Plaintiff's mental impairment was not severe and did not cause any significant impairment, the ALJ was not required to include it in Plaintiff's RFC.' ") (quoting Banks v. Berryhill, 2018 U.S. Dist. LEXIS 56134, *14, 2018 WL 1631277 (C.D. Cal. Apr. 2, 2018)); Malbog v. Kijakazi, No. CV 20-00500 JAO-RT, 2021 WL 4750574, at *5–8 (D. Haw. Oct. 12, 2021) ("Courts have held that *Hutton* is distinguishable in cases where it was clear from the record that the ALJ considered and discussed limitations associated with the claimant's non-severe impairments in constructing the claimant's RFC."); Miguel A. V. v. Saul, No. 8:20-CV-01560-AFM, 2021 WL 2864868, at *2 (C.D. Cal. July 8, 2021) ("Courts in the Ninth Circuit have found *Hutton* to be inapplicable where the ALJ considered Plaintiff's non-severe mental impairments at step four before concluding that those non-severe impairments did not necessitate inclusion of any mental limitations in the RFC . . . Other courts have followed *Hutton* where the ALJ's decision did not reflect any reasoned consideration in the RFC of Plaintiff's mild mental limitations . . . Despite finding Plaintiff's mental impairments to be non-severe, the ALJ stated that she nonetheless considered them at step four of Plaintiff's RFC assessment . . . The ALJ also considered the opinions of psychological consultants J. Tendler, M.D., and D. Goosby, Psy.D., in

1   Plaintiff's RFC assessment."); <u>Jann B. S. v. Kijakazi</u>, No. 4:20-CV-00354-CWD, 2021 WL

2   4005986, at *9–10 (D. Idaho Sept. 2, 2021) (finding no error under <u>Hutton</u> as "the ALJ

3   specifically considered Petitioner's non-severe mental impairments in evaluating Petitioner's

4   RFC [including the] opinions of state agency medical consultants . . . [in addition to finding]

5   Petitioner's reported symptoms were disproportionate to the objective findings in the medical

6   record, and inconsistent with Petitioner's own testimony . . . [and] supported these findings with

7   specific references to inconsistencies in the record [and thus] concluded Petitioner's statements

8   concerning the intensity, persistence, and limiting effects of her cognitive symptoms were not

9   consistent with the record, and concluded that her past relevant work does not require

10  performance of work-related activities precluded by Petitioner's RFC."); <u>Charles L. v. Saul</u>, No.

11  20-CV-00143-DEB, 2021 WL 856997, at *3 (S.D. Cal. Mar. 8, 2021) ("<i>Hutton</i> is inapposite

12  because the ALJ here considered Plaintiff's mental impairments in the RFC . . . by analyzing and

13  giving 'great weight' to Dr. Nicholson's opinion [and because additionally] the ALJ considered

14  Plaintiff's own testimony about his mental limitations but found it 'did not fully comport' with

15  his 'conservative treatment' and 'strenuous activities of daily living[,]' [and thus] the ALJ

16  properly supported his finding that Plaintiff's mental impairments were not severe, and any error

17  was harmless because the ALJ considered all of Plaintiff's limitations in the RFC.").

18          **D.      The Court Finds No Remandable Error**

19          The Court now turns to a further and more pointed discussion of the ALJ's decision in

20  light of the above caselaw and regulations.

21          Within the step 2 section of the decision, when finding mild limitations in three of the

22  four areas of mental functioning, the ALJ considered in detail various forms of evidence

23  pertaining to the mental limitations.  In finding a mild limitation in the area of understanding,

24  remembering, or applying information, in addition to the observation of Plaintiff understanding

25  and appropriately responding during the hearing, the ALJ cited: that Plaintiff had intact memory

26  in October of 2015; reports of normal memory in November of 2016, December of 2016, and

27  January of 2017; that during the February 2017 consultative exam, Plaintiff remembered three

28  out of three objects after five minutes; and in November of 2018, Plaintiff presented with

average intelligence and normal insight and judgment.  (AR 149.)  In finding a mild limitation in interacting with others, the ALJ weighed the following: that Plaintiff testified to social anxiety and difficulty getting along with others; that in the function report, she reported she goes to church, the library, and AA meetings; that in October of 2015, she felt anxious and had fearful thoughts; that in December of 2016, Plaintiff had an anxious mood, but cooperative behavior; that she was assessed with stable bipolar disorder; that in January of 2017, Plaintiff had an euthymic mood; that during the February 2017 consultative exam, Plaintiff was mildly depressed and mildly anxious, but showed no suicidal ideation; that in March of 2017, Plaintiff had a depressed mood, but normal behavior, and no suicidal ideation; that in August of 2017, Plaintiff had an appropriate mood and affect; that in June of 2018, the Plaintiff had a labile mood, but appropriate affect; and that in November of 2018, Plaintiff had average eye contact, cooperative attitude, logical thought process, full affect, and clear speech.  (AR 149.)  In finding a mild limitation in the area of concentrating, persisting, or maintaining pace, the ALJ cited to: Plaintiff's testimony that she had difficulty concentrating; that in November of 2016, Plaintiff was fully oriented; that during the February 2017 consultative examination, Plaintiff was alert and oriented times three; that in October of 2017, Plaintiff was alert and oriented times three; and that in November of 2018, Plaintiff reported some impairment of attention/concentration, but her cognition was reported as within normal limits.  (AR 149.)

Additionally within the step 2 section of the decision, after finding mild limitations in three of the four areas (AR 149-150), and following the ALJ's express statement that the RFC reflects the degree of limitation found in the paragraph B mental function analysis (AR 150), the ALJ further elaborated on the medical opinion evidence.  There, the ALJ stated: "[a]s for the mental opinion evidence, the state psychological consultants and the claimant's consultative examiner found that the claimant had nonsevere mental impairments . . . [t]heir opinions are supported by mental status examinations that showed a depressed mood at times, a normal mood at other times, but otherwise cooperative behavior . . . [t]heir opinions are supported by other mental status examinations that showed intact memory and the claimant being fully oriented . . . [t]herefore, their opinions are granted significant weight." (AR 150.)  The ALJ then noted that in

1  a third-party report, the Plaintiff's niece opined the Plaintiff was limited in memory, completing

2  tasks, and concentration, and the ALJ conversely granted little weight to the report based on

3  precisely the same reports as cited when granting the psychological consultant and consultative

4  examiners opinions significant weight, finding the third party report to be contradicted by such

5  evidence.  (Id.)

6       Then, within the RFC section of the decision, in the same paragraph finding the alleged

7  persistence and limiting effects of the symptoms to not be entirely consistent with the evidence

8  of the record, the ALJ discussed additional evidence relating to Plaintiff's alleged mental

9  ailments, stating:

10          Additionally, mental status examinations showed intact memory,
            the claimant was fully oriented, the claimant showed a depressed
11          mood at times, a normal mood other times, but otherwise
            cooperative behavior . . . .  Moreover, the clamant was engaging,
12          friendly, and did not show physical or mental limitations during
            the hearing (hearing testimony).  Lastly, the claimant is still able to
13          perform activities of daily living, as the claimant reported that she
            takes short walks, drives, waters plants, shops, handles financial
14          accounts, and occasionally hikes and camps (Exhibit 3E).[6]  The
            above factors show that the claimant's impairments are not
15          disabling.

16  (AR 152.)

17       Finally, the ALJ concluded the RFC subsection by stating: "In sum, the above residual

18  functional capacity assessment is supported by evidence in the record of full strength and normal

19  walking.  The record shows the claimant had stable psychological functioning in the record."

20  (AR 153.)

21       Given the caselaw and regulations above, and based on the Court's review and

22  summarization herein of the relevant portions of the ALJ's opinion, specifically of finding 3

23  (step 2) and finding 5 (RFC), the Court finds no remandable error within the ALJ's decision.  4

24

25  [6]  As the Court noted above when summarizing the hearing testimony above, when the ALJ asked about camping
    and hiking, the Plaintiff answered that she meant to answer that such activities were previous hobbies and that she
26  no longer hikes or camps.  (AR 179.)  The Court notes that the questionnaire reflects that under bobbies and
    interests, Plaintiff answered: aerobics, hiking, camping, gardening, crafts, horseback riding, sewing.  Where asked
27  how often, the Plaintiff did answer: "Occasional hiking camping.  Others on a daily basis, however my back
    condition always dictates the level of activity."  (AR 410.)  Plaintiff did not challenge the ALJ's listing of the
28  camping and hiking aspect of the listed activities utilized by the ALJ when finding in part that such activities
    supported the finding that Plaintiff's impairments were not disabling.

Unlike <u>Hutton</u>, the ALJ here did not expressly decline to consider Plaintiff's mental impairments and the ALJ's own finding of a mild limitation stemming from such.  <u>See</u> <u>Jones</u>, 2018 WL 3956479, at *2–4 (distinguishing of <u>Hutton</u> as based on the ALJ's "explicit refusal" to consider the claimant's mild mental limitations caused by PTSD in the RFC); <u>McIntosh</u>, 2018 WL 3218105, at *4 ("In this case, unlike *Hutton*, the ALJ expressly considered Plaintiff's mental impairment in formulating his residual functional capacity.").

The ALJ completed a significant discussion of Plaintiff's mental impairments when finding only mild limitations at step 2.  The ALJ then did consider evidence relating to Plaintiff's mental impairments after step two in a reasoned manner within the RFC determination, including discussion of the mental status examinations, mental limitations demonstrated during the hearing, and daily activities (AR 152), before determining that the RFC is supported by the evidence in the record pertaining to strength, walking, and the "stable psychological functioning," (AR 153).  <u>See</u> <u>Sanguras</u>, 2021 WL 973940, at *5 ("As in *Denney* and *George A.*, it is clear the ALJ considered evidence related to Plaintiff's mental impairments after step two, including her activities of daily living and evidence concerning her ability to complete tasks and follow instructions."); <u>Denney</u>, 2019 WL 4076717, at *7–8 ("The ALJ did not err in addressing Plaintiff's mental impairments in great detail at step two and briefly at step four.  Although an ALJ must discuss and evaluate evidence leading to his conclusion, he is not required to do so under any particular heading in his written decision."); <u>Thompson</u>, 2019 WL 3302471, at *7 ("Moreover, at step four, the ALJ expressly considered evidence of Plaintiff's mental impairments."); <u>George A.</u>, 2019 WL 1875523, at *4–5 ("[I]n assessing Plaintiff's RFC at step four, the ALJ considered Plaintiff's mental impairments again . . . [including] report of the psychiatric consultative examiner . . . [and] other evidence . . . [including] daily activities."); <u>Miguel A.</u>, 2021 WL 2864868, at *2 ("Despite finding Plaintiff's mental impairments to be non-severe, the ALJ stated that she nonetheless considered them at step four of Plaintiff's RFC assessment . . . The ALJ also considered the opinions of psychological consultants . . . in Plaintiff's RFC assessment."); <u>Jann B.</u>, 2021 WL 4005986, at *9–10 ("the ALJ specifically considered Petitioner's non-severe mental impairments in evaluating Petitioner's RFC [including

1  the] opinions of state agency medical consultants . . . [in addition to finding] Petitioner's reported

2  symptoms were disproportionate to the objective findings in the medical record, and inconsistent

3  with Petitioner's own testimony."); Charles L., 2021 WL 856997, at *3 ("*Hutton* is inapposite

4  because the ALJ here considered Plaintiff's mental impairments in the RFC . . . by analyzing and

5  giving "great weight" to Dr. Nicholson's opinion [and because additionally] the ALJ considered

6  Plaintiff's own testimony about his mental limitations.").

7         This reasoned further discussion in conjunction with the express incorporation of the step

8  two findings within the RFC, distinguishes this from other cases finding error, and the Court

9  finds this was not a hollow boilerplate incorporation of the paragraph B criteria within the RFC.

10  The ALJ did consider Plaintiff's alleged mental impairments in the RFC analysis section of the

11  decision, and considered additional evidence related to the mental impairments. See Aida I.,

12  2020 WL 434319, at *4–5 ("In the Court's view, the objective evidence of specific mild

13  functional limitations here, which the ALJ never stated he was rejecting, is what distinguishes

14  this case from cases in which courts have found *Hutton* to be inapplicable."); Solomon, 376 F.

15  Supp. 3d at 1021–22 ("Here, in contrast, the record is silent on this key issue—the ALJ's opinion

16  does not explain why Solomon's mental impairments were omitted from the RFC and

17  hypotheticals."); Carlson, 2019 WL 1116241, at *17–18 ("As in *Hutton*, the ALJ did not discuss

18  or give reasoned consideration of the plaintiff's depression and anxiety in his RFC assessment.");

19  Uranna G., 2019 WL 5342537, at *4 ("The decision does not contain any discussion or reflect

20  any reasoned consideration of the mild limitations caused by plaintiff's anxiety impairment in

21  connection with Finding No. 5 (RFC)."); Smith, 2015 WL 9023486, at *8–9 ("The current record

22  is unclear as to whether the ALJ properly considered the claimant's mild mental limitations when

23  assessing her RFC."); Gates, 2017 WL 2174401, at *2–3 ("According to *Medlock*, the

24  'consideration' requirement is met if the ALJ 'actually reviews the record and specifies reasons

25  supported by substantial evidence for not including the non-severe impairment....' Here, the

26  ALJ's decision does not reflect an actual consideration and reasoned determination as to why the

27  mild social functioning limitation was not included in the RFC.").

28         The Court further finds no error in the ALJ's presentation of various hypotheticals to the

1   VE.[7]  See Sanguras, 2021 WL 973940, at *6 ("Thus, if an ALJ finds a mild mental impairment is

2   adequately addressed in an RFC that omits mental limitations, the hypothetical questions posed

3   to the vocational expert need not include mental limitations . . .  Because the ALJ determined

4   Plaintiff's nonsevere depression did not require limitations in the RFC, the ALJ did not need to

5   include  mental  limitations  in  the  hypothetical  questions  posed  to  the  vocational  expert  to

6   determine Plaintiff's ability to perform work in the national economy."); George A., 2019 WL

7   1875523, at *4–5 ("Given the absence of evidence that Plaintiff's mild mental impairments

8   limited Plaintiff's ability to perform any work-related activities, the ALJ was not required to

9   include additional mental limitations in his RFC assessment or hypothetical to the VE."); Jones,

10  2018 WL 3956479, at *2–4 ("Because the ALJ found that Plaintiff's mental impairments were

11  non-severe and did not cause any significant impairments, the ALJ was not required to include

12  them in Plaintiff's RFC.").

13          The Court finds the ALJ's RFC determination to be supported by substantial evidence

14  and the decision as a whole to be free from remandable harmful error.

15  / / /

16  / / /

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22

---

[7]  The Court does note that the ALJ did present one mental limitation in a hypothetical.  Specifically, the ALJ
23  presented a hypothetical person that would be precluded from public contact work due to anxiety, and the VE stated
    that would eliminate anything that is sales related, and the only job that might still be available would be the
24  administrative assistant, but the VE would need more information about public contact involved in the position.
    (AR 192.)  Plaintiff answered that the assistant position was at a medical repair facility, so she was on the phones,
25  doing shipping and receiving, and was the liaison with the corporate office.  (Id.)  The VE confirmed such position
    would involve occasional public contact eliminating the position.  (AR 193.)  The parties do not appear to address
26  the fact that at least one mental limitation was presented in a hypothetical to the VE.  The Court finds this would add
    support for the position that the ALJ made the decision not to include any mental limitations in the RFC after
27  considering the mental limitations in the RFC determination.  The Court further notes that at finding six of the ALJ's
    decision, the ALJ stated that "[i]n comparing the claimant's residual functional capacity with the physical **and
28  mental demands** of this work, the undersigned finds that the claimant is able to perform it as **generally
    performed**."  (AR 153 (emphasis added).)

1

**V.**

2

**CONCLUSION AND ORDER**

3      Based on the foregoing, the Court finds that the ALJ did not err in the determination of

4  Plaintiff's RFC, and did not err by failing to include the finding of mild mental limitations in

5  Plaintiff's RFC.   The ALJ's decision is supported by substantial evidence and free of

6  remandable error.   Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the

7  decision of the Commissioner of Social Security is DENIED.   It is FURTHER ORDERED that

8  judgment be entered in favor of Defendant Commissioner of Social Security and against

9  Plaintiff Judith Lee Frary.   The Clerk of the Court is DIRECTED to CLOSE this action.

10

11 IT IS SO ORDERED.

12 Dated:   __**November 17, 2021**__                          _____

UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28